NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

---

|  |  |  |
|---|---|---|
| ATLANTIC PLASTIC & HAND SURGERY, PA, *et al.*, | : : : | |
| Plaintiffs, | : : | Civil Action No. 17-4599-BRM-LHG |
| v. | : : | |
| ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE COMPANY, *et al.*, | : : : : | **OPINION** |
| Defendants. | : : | |

---

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendant Anthem Blue Cross Life and Health Insurance Company's ("Anthem") Motion to Dismiss pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 8.) Plaintiffs Atlantic Plastic & Hand Surgery, PA ("Atlantic"), Michael S. Risin, M.D. ("Dr. Risin"), and Kathleen M. Regenye's ("Regenye") (collectively, "Plaintiffs") oppose the motion. (ECF No. 13.)[1] Having reviewed the parties' submissions filed in connection with the motion and having declined to hold oral argument pursuant to Federal Rule of Civil

---

[1] After filing its reply (ECF No. 14), Anthem moved for leave to file supplemental authority, requesting the Court consider the order issued in *Atl. Plastic Hand Surgery, P.A. v. Anthem Blue Cross Life and Health Ins. Co.*, No. 17-4600, 2018 WL 1420496 (D.N.J. Mar. 22, 2018). (ECF No. 15). The Court granted the motion and accepted Anthem's supplemental authority. (ECF No. 16.) Anthem submitted a second motion to file additional supplemental authority. (ECF No. 17.) In light of this decision, Anthem's request to file supplemental authority is moot.

Procedure 78(b), for the reasons set forth below and for good cause having been shown, Defendant's Motion to Dismiss is **GRANTED**.

## I. BACKGROUND

For the purposes of this Motion, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to Plaintiffs. *See Philips v. Cty. of Allegheny*, 515 F. 3d 224, 228 (3d Cir. 2008). Further, the Court considers any "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citation omitted).

Anthem is an insurer for group health plans and administrator of health benefits. (ECF No. 1 ¶ 19.) Regenye, an insured patient, has coverage for healthcare services under her health benefits plan (the "Plan"), administered by Anthem. (*Id.* ¶¶ 4, 33.) On August 3, 2012, Dr. Risen, a board-certified plastic surgeon and owner of Atlantic, a medical association, performed a surgical procedure on Regenye. (*Id.* ¶¶ 1-3, 32.) Atlantic and Dr. Risen ("Providers") are non-participating providers who do not contract with Anthem for services rendered to Anthem's insured patients. (*Id.* ¶ 33.) Procedures performed by non-participating providers are considered "out-of-network" services. (*Id.* ¶ 34.) Prior to performing the procedure, Providers contacted Anthem to confirm Regenye's benefits coverage for out-of-network services. (*Id.* ¶ 35.) Additionally, Regenye signed an Assignment of Benefits and Limited Power of Attorney form (together, "Assignment") to assign benefits under her Plan to the Providers. (*Id.* ¶ 16.)

On August 22, 2012, Providers filed a claim for payment in the amount of $92,723.80 for the surgical procedure performed on Regenye. (*Id.* ¶¶ 32, 38.) However, on September 17, 2012, Anthem sent the Providers an Explanation of Benefits form ("EOB") with a payment in the amount of $4,281.77. (*Id.* ¶ 40.) On September 3, 2013, the Providers filed an appeal for the remaining

unpaid amount, but Anthem did not respond. (*Id*. ¶¶ 41-42, 48.) On December 10, 2013, the Providers filed a second appeal, but again, Anthem did not respond. (*Id*. ¶¶ 43-44.)

According to Plaintiffs, because Regenye has the right to receive benefits for out-of-network services and she assigned the Providers her rights and benefits, Providers "are entitled to recover benefits due to them (and/or benefits due to Regenye), and to enforce rights (and/or the rights of []Regenye)." (*Id*. ¶¶ 58-60.) Having exhausted their administrative remedies, Plaintiffs seek to recover the remaining $88,442.03 in unpaid benefits and to enforce their rights under the terms of their plan pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") Section 502(a)(1)(B). (*Id*. ¶¶ 48, 50.) Plaintiffs claim the denial of benefit payment in full "is unsupported by substantial evidence, erroneous as a matter of law, not made in good faith, arbitrary and capricious and is in violation of ERISA." (*Id*. ¶ 64.) Moreover, Plaintiffs claim Anthem is a fiduciary under the Plan, but has failed to administer the Plan in the interest of Regenye. (*Id*. ¶¶ 50, 57, 66.) Further, Plaintiffs seek to recover attorney's fees and costs. (*Id*. ¶¶ 73-76.)

## II.    LEGAL STANDARD

### A.    Rule 12(b)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure mandates the dismissal of a case for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "A challenge to subject matter jurisdiction under Rule 12(b)(1) may be either a facial or a factual attack." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). A facial attack "challenges the subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to 'consider the allegations of the complaint as true.'" *Id*. (citing *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006)). A factual attack, on the other hand, "attacks the factual allegations underlying the

complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise present[ing] competing facts.'" *Id.* (quoting *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)). A "factual challenge allows a court [to] weigh and consider evidence outside the pleadings." *Id.* (citation omitted). Thus, when a factual challenge is made, "no presumptive truthfulness attaches to [the] plaintiff's allegations." *Id.* (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). Rather, "the plaintiff will have the burden of proof that jurisdiction does in fact exist," and the court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.*

The Third Circuit has "repeatedly cautioned against allowing a Rule 12(b)(1) to dismiss for lack of subject matter jurisdiction to be turned into an attack on the merits." *Davis*, 824 F.3d at 348-49 (collecting cases). "[D]ismissal for lack of jurisdiction is not appropriate merely because the legal theory alleged is probably false, but only because the right claimed is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" *Id.* at 350 (quoting *Kulick v. Pocono Downs Racing Ass'n, Inc.*, 816 F.2d 895, 899 (3d Cir. 1987)). "In this vein, when a case raises a disputed factual issue that goes both to the merits and jurisdiction, district courts must 'demand less in the way of jurisdictional proof than would be appropriate at a trial stage.'" *Id.* (citing *Mortensen*, 549 F.2d at 892 (holding that dismissal under Rule 12(b)(1) would be "unusual" when the facts necessary to succeed on the merits are at least in part the same as must be alleged or proven to withstand jurisdictional attacks)). These cases make clear that "dismissal via a Rule 12(b)(1) factual challenge to standing should be granted sparingly." *Id.*

## B.    Rule 12(b)(6)

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips*, 515 F.3d at 228 (3d Cir. 2008). "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than 'an unadorned, the defendant-harmed-me accusation'" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## III. DECISION

In moving to dismiss Plaintiffs' Complaint, Anthem advances the following arguments: (A) the Providers lack standing to bring an ERISA claim for any additional benefits under the Plan; (B) Regenye has not alleged any injury-in-fact, and therefore lacks Article III standing; and (C) the Complaint fails to identify any specific provision of the Plan to adequately state an ERISA claim for denial of benefits or breach of fiduciary duty. (ECF No. 8-1 at 1-2.) The Court addresses each argument in turn.

### A. Provider Standing Under ERISA

Anthem argues the Providers lack standing to bring an ERISA claim for denied benefits because: (1) the Providers are neither participants nor beneficiaries to raise an ERISA claim; and (2) the Plan's anti-assignment clause voids the Assignment of rights from Regenye to the Providers. (ECF No. 8-1 at 5-8.) Plaintiffs argue the Providers are designated authorized representatives through the Assignment, which grants the Providers "the rights of [Regenye] to pursue claims against Anthem, the Plan and obtain any and all information to appeal any adverse benefit determination." (ECF No. 13 at 7.) Plaintiffs, however, do not argue whether the Providers are either participants or beneficiaries, but rather concede Regenye is the beneficiary under the Plan and argue the Providers have standing to sue as assignees of the beneficiary. (ECF No. 1 ¶¶

61-62.) Specifically, Plaintiffs argue "[n]either the Plan at issue or ERISA itself act as a barrier to the Providers to have standing as a result of [Regenye's] designation." (*Id.*; ECF No. 13 at 5.)

Section 502(a) of ERISA serves as the civil enforcement provision to assert a private right of action under the statute. 29 U.S.C. § 1132(a). Under Section 502(a), a "participant or beneficiary" has standing to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." *Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 400 (3d Cir. 2004) (quoting 29 U.S.C. § 1132(a)(1)(B)). A "participant" is defined as "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan." 29 U.S.C. § 1002(7). A "beneficiary" is defined as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8).

Additionally, the right to bring a civil action under ERISA extends to healthcare providers who are not participants or beneficiaries in their own right, but "obtain derivate standing by assignment from a plan participant or beneficiary." *N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 372 (3d Cir. 2015) (citing *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 176 n.10 (3d Cir. 2014)). While "ERISA itself is silent on the issue of derivative standing and assignments," the Third Circuit held "as a matter of federal common law, when a patient assigns payment of insurance benefits to a healthcare provider, that provider gains standing to sue for that payment under ERISA [Section] 502(a)." *Id.* at 372. Notably, the Third Circuit explained:

> It is a basic principle of assignment law that an assignee's rights derive from the assignor. That is, an assignee of a contract occupies the same legal position under a contract as did the original contracting party, he or she can acquire through the assignment no more and no fewer rights than the assignor had, and cannot recover under the assignment any more than the assignor could recover.

> Thus, assuming the validity of the [plan p]articipants' assignment to the Providers, [Providers] now stand in the shoes of the [p]articipants, and have standing to assert whatever rights the assignor[s] possessed.

*CardioNet Inc.*, 751 F.3d at 178 (emphasis omitted) (quotation omitted).

Although the Third Circuit opined on assignments and a provider's derivative standing, the validity and enforceability of anti-assignment clauses have not been addressed. However, district courts in this circuit have considered and consistently upheld the enforceability of clear and unambiguous anti-assignment clauses. *See Cohen v. Indep. Blue Cross*, 820 F. Supp. 2d 594 (D.N.J. 2011) ("Having concluded that the anti-assignment clause in the [p]lan is not barred under ERISA, the [c]ourt finds the unambiguous language of that clause prohibits the [insured] from assigning his benefits."); *Univ. Spine Ctr. v. Aetna, Inc.*, No. 17-7825, 2017 WL 6514663, at *3 (D.N.J. Dec. 20, 2017) (upholding the enforceability of an anti-assignment clause after finding it to be clear and unambiguous); *Advanced Orthopedics & Sports Med. v. Blue Cross Blue Shield of Mass.*, No 14-7280, 2015 WL 4430488, at *4 (D.N.J. July 20, 2015) ("[C]ourts routinely enforce anti-assignment clauses contained in ERISA-governed welfare plans."); *Prof'l Orthopedic Assocs., PA v. CareFirst BlueCross BlueShield*, No. 14-4486, 2015 WL 4025399, at *4 (D.N.J. June 30, 2015) (finding the majority of circuits and other district courts "have considered the issue and held such [anti-assignment] provisions to be enforceable"); *Briglia v. Horizon Healthcare Servs., Inc.*, No. 03-6033, 2005 WL 1140687, at *4-5 (D.N.J. May 13, 2005).

Nonetheless, courts have invalidated anti-assignment clauses when the right to enforce the clause had been waived. *See Ambulatory Surgical Ctr. of N.J. v. Horizon Healthcare Servs.*, No. 07-2538, 2008 WL 8874292, at *3, 5 (D.N.J. Feb 21, 2008). Specifically, "[a] party may waive an anti-assignment clause 'by written instruction, a course of dealing, or even passive conduct, i.e., taking no action to invalidate the assignment vis-à-vis the assignee.'" *N. Jersey Brain & Spine Ctr.*

*v. Saint Peter's Univ. Hosp.*, No. 13-74, 2013 WL 5366400 at *6 (D.N.J. Sept. 25, 2013) (quoting

*Gregory Surgical Serv., LLC v. Horizon Blue Cross Blue Shield of N.J., Inc.*, No. 06-462, 2007

WL 4570323, at *3 (D.N.J. Dec. 26, 2007).

Here, the Plan's anti-assignment clause states:

> You authorize the Plan to make payments directly to Providers for Covered Services. Payments may also be made to, and notice regarding the receipt and/or adjudication of claims sent to, an Alternate Recipient (any child of a Subscriber who is recognized, under a Qualified Medical Child Support Order (QMSCO), as having a right to enrollment under the Employer's Plan), or that person's custodial parent or designated representative. Any payment made by the Plan will discharge the Plan's obligation to pay for Covered Services. You cannot assign your right to receive payment to anyone else, except as required by a "Qualified Medical Child Support Order" as defined by ERISA or any applicable state law.

(Regenye's Plan (ECF No. 8-2) at 78.) To the extent Plaintiffs allege the anti-assignment clause is

vague and ambiguous, Plaintiffs fail to advance any argument or cite any case law to support this

claim. (ECF No. 13 at 5-7.) To the contrary, the anti-assignment clause appears clear on its face,

stating: "You cannot assign your right to receive payment to anyone else, except as required by a

'Qualified Medical Child Support Order' as defined by ERISA or any applicable state law." (ECF

No. 8-2 at 78.) Indeed, district courts have enforced anti-assignment clauses, finding this very

same language to be clear and unambiguous. *See Kayal Orthopaedic Ctr., P.C. v. Empire Blue*

*Cross Blue Shield*, No. 16-9059, 2017 WL 4179813, at *3 (D.N.J. Sept. 21, 2017) (enforcing anti-

assignment clause, which stated "[y]ou cannot assign your right to receive payment to anyone

else"); *Atl. Plastic Hand Surgery, P.A. v. Anthem Blue Cross Life and Health Ins. Co.*, No. 17-

4600, 2018 WL 1420496, at *5 (D.N.J. Mar. 22, 2018) (enforcing anti-assignment clause, which

stated "[y]ou cannot assign your right to receive payment to anyone else"). Therefore, without any

opposing arguments by Plaintiffs, and the weight of authority favoring the enforceability of this language, the Court finds the anti-assignment clause is clear and unambiguous.

Further, Plaintiffs argue the anti-assignment clause does not prevent standing by the Providers because "the very first sentence of the purported anti-assignment provision" directs payment of health benefits directly to the Providers. (ECF No. 13 at 5-6.) However, this argument fails to address the central issue Plaintiffs face—whether the anti-assignment clause is valid and enforceable. Indeed, direct payment alone would not constitute a waiver of an anti-assignment clause for the Providers to obtain standing by assignment. *See Gregory Surgical Serv., LLC*, 2013 WL 4570323 at, *4 (finding direct payment alone does not suffice, but "a course of dealing between [providers] and [the plan administrator] . . . constitutes a waiver of the anti-assignment provision"). Therefore, Plaintiffs' argument fails to invalidate the anti-assignment clause.

Moreover, relying on *N. Jersey Brain & Spine Ctr.*, 801 F.3d at 372-73, Plaintiffs argue an assignment designates the Providers as the authorized representative to act on behalf of Regenye and pursue an ERISA claim against Anthem. (ECF No. 8-1 at 6-7). However, Plaintiffs' argument is misplaced. In *N. Jersey Brain & Spine Ctr.*, the ERISA-governed plan in question did not include an anti-assignment clause, and therefore, the Third Circuit never addressed its enforceability to bar standing by a provider. The Third Circuit held, "when a patient assigns payment of insurance benefits to a healthcare provider, that provider gains standing to sue for that payment under ERISA [Section] 502(a)," but the holding was reached in the absence of an anti-assignment clause. *N. Jersey Brain & Spine Ctr.,* 801 F.3d at 372. Because the Providers are neither participants nor beneficiaries and the Plan includes an unambiguous, and therefore enforceable, anti-assignment clause, the Providers lack standing to bring an ERISA claim. Accordingly, Anthem's Motion to Dismiss Atlantic and Dr. Risin for lack of subject matter jurisdiction is **GRANTED**.

**B.      Regenye's Article III Standing**

Anthem argues Regenye has not suffered an injury-in-fact, and therefore lacks Article III standing to bring a claim. (ECF No. 8-1 at 8.) Specifically, Anthem argues Regenye fails to allege any denial of service or any out-of-pocket expenses she incurred because of Anthem to demonstrate an injury-in-fact. (*Id.* at 9.) Plaintiffs argue Regenye sufficiently demonstrated an injury-in-fact to confer standing because, if Anthem does not pay for the services provided, then Ms. Regenye would be responsible for the unpaid balance owed for the surgical procedure. (ECF No. 13 at 3-4.)

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Lance v. Coffman*, 549 U.S. 437, 439 (2007). "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "The standing inquiry focuses on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." *Constitution Party of Pa.*, 757 F.3d at 360 (citing *Davis v. FEC*, 554 U.S. 724, 734 (2008)).

Article III "standing consists of three elements." *Spokeo*, 136 S. Ct. at 1547 (quoting *Lujan*, 504 U.S. at 560). To establish standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.* (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)).

As in *Spokeo*, "[t]his case primarily concerns injury in fact, the '[f]irst and foremost' of standing's three elements." *Id.* (quoting *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 103 (1998)). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of

a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id*. at 1548 (quoting *Lujan*, 504 U.S. at 560). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Id*. (citations omitted). "Particularization is necessary to establish injury in fact, but it is not sufficient. An injury in fact must also be 'concrete.'" *Id*. "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Id*. (explaining that "[w]hen we have used the adjective 'concrete,' we have meant to convey the usual meaning of the term—'real,' and not 'abstract'"). "Concreteness, therefore, is quite different from particularization." *Id*.

In *Spokeo*, the Supreme Court held that intangible injuries can be concrete and, under certain circumstances, the risk of real harm can also satisfy the requirement of concreteness. *Id*. at 1549. However, "Article III standing requires a concrete injury even in the context of a statutory violation." *Id*. As such, a plaintiff may "not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id*. (citing *Summers v. Earth Island Inst.*, 555 U.S. 448, 496 (2009) ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation . . . is insufficient to create Article III standing.")) (additional citations omitted).

Here, Plaintiffs have sufficiently set forth factual allegations, if taken as true, to demonstrate Regenye suffered an injury-in-fact to establish Article III standing. The Complaint alleges Regenye is "personally responsible for all medical charges" and the Providers "do not waive any deductibles or co-payment by acceptance of the assignment." (ECF No. 1 ¶¶ 16-17.) Anthem's failure to pay benefits allegedly due for services rendered by the Providers imposes an actual or imminent, not conjectural or hypothetical, injury on Regenye for the unpaid balance due. *Whitemore v. Arkansas*, 495 U.S. 149, 158 (1990) ("A threatened injury must be certainly

impending to constitute injury in fact." (emphasis omitted)). Moreover, the Complaint makes no suggestion the Providers will forgive or opt not to recover the outstanding balance due from Regenye. *See Cohen v. Horizon Blue Cross Blue Shield of N.J.*, No. 13-3057, 2013 WL 5780815, at *7 (D.N.J. Oct. 25, 2013) (finding a patient's injury was not "merely illusory or hypothetical," when "nothing in the record suggests that [the provider] has forgiven or will forgive [the patient's] debt"); *Menkowitz v. Blue Cross Blue Shield of Ill.*, No. 14-2946, 2014 WL 5392063, at *9 (D.N.J. Oct. 23, 2014) (finding the complaint, drawing all inferences in favor of the plaintiff, appeared to demonstrate the patient is indebted to the providers for unpaid medical services). Rather, the legal action taken demonstrates the Providers' willingness and full intention to recover any unpaid balance they believe may rightfully belong to them for the services rendered. *See Prof'l Orthopedic Assocs., PA v. Excellus Blue Cross Blue Shield*, No. 14-6950, 2015 WL 4387981, at *9 (D.N.J. July 15, 2015) ("The clear inference from the [c]omplaint is that [the patient] remains indebted to the [p]rovider [p]laintiffs for a greater amount than she would have been had [the plan administrator] properly paid the asserted benefits."). Indeed, as Plaintiffs assert, "if [Anthem] do[es] not pay what is owed, then [Regenye] is on the hook for the balance." (ECF No. 13 at 3.) To the extent Anthem argues the Providers have not yet billed Regenye for the balance due, and therefore any potential injury is speculative (ECF No. 8-1 at 8), drawing all inferences in favor of Plaintiffs, the consequential liability Regenye faces is sufficient to constitute a concrete and particularized injury. *Spokeo*, 136 S. Ct. at 1547.

Moreover, other district courts in this circuit have similarly held a patient's consequent liability caused by a plan administrator's failure to pay benefits allegedly due "constitute[s] a particularized injury sufficient to confer Article III standing." *Cohen*, 2013 WL 5780815, at *7; *see also Prof'l Orthopedic Assocs., PA*, 2015 WL 4025399, at *9 (finding allegations of a

defendant's failure to pay benefits allegedly due to a patient and the patient is personally liable for the medical expenses are sufficient to establish Article III standing); *Atl. Plastic & Hand Surgery, PA*, 2018 WL 1420496, at *10. Therefore, Anthem's non-payment affects Regenye in a personal and individual way to establish a concrete and particularized injury-in-fact. Accordingly, Plaintiffs have established Regenye has Article III standing to bring an ERISA claim.

### C.    Failure to State an ERISA Claim

#### i.    Denial of Benefits Claim

Anthem argues Plaintiffs have failed to state a claim for denial of benefits (ECF No. 8-1 at 9-10.) Specifically, Anthem argues Plaintiffs have failed to identify or refer to any particular provision violated under the Plan. (*Id.* at 9.) Plaintiffs argue the Complaint sufficiently alleges an ERISA violation to avoid dismissal of their claims. (ECF No. 13 at 9.) Specifically, Plaintiffs argue the Complaint alleges Anthem's functions in managing the Plan and failure to fulfill its obligation as a plan administrator. (*Id.* at 11.)

Under Section 502(a)(1)(B), a civil action may be brought "to recover benefits due to [participants or beneficiaries] under the terms of [their] plan, to enforce [their] rights under the terms of the plan, or to clarify [their] rights to future benefits under the terms of the plan." *See Pascack Valley Hosp. Inc. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 400 (3d Cir. 2004) (quoting 29 U.S.C. § 1132(a)(1)(B)). In order to prevail under Section 502(a)(1)(B), a plaintiff must establish his or her "'right to benefits that is legally enforceable against the plan,' and that the plan administrator improperly denied those benefits." *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 120 (3d Cir. 2012) (quoting *Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 574 (3d Cir. 2006). To determine whether a plan administrator improperly denied benefits, the court reviews the denial under an "arbitrary and capricious" standard. *Id.* at 120-21; *see also McElroy v.*

*Smithkline Beecham Health & Welfare Benefits Trust Plan*, 340 F.3d 139, 143 (3d Cir. 2003) (finding a court "must defer to [the plan administrator's] interpretation unless it is arbitrary or capricious"). "An administrator's decision is arbitrary and capricious 'if it is without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Id.* at 121 (quoting *Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 845 (3d Cir. 2011). Conversely, an administrator's decision is not arbitrary and capricious if it is "reasonably consistent with unambiguous plan language." *Bill Gray Enters. v. Gourley*, 248 F.3d 206, 218 (3d Cir. 2001). Moreover, "plaintiffs retain[] the burden to prove that [they are] entitled to benefits, and that the plan administrator's decision was arbitrary and capricious." *Lima v. Aetna Life Ins. Co.*, No. 12-7770, 2013 WL 6903946, at *6 (D.N.J. Dec. 31, 2013).

Here, even accepting the Complaint as true, Plaintiffs fail to plead sufficient factual allegations to state a claim for relief. Although Section 502(a)(1)(B) of ERISA affords a private right of action to recover benefits due under the terms of the Plan, Plaintiffs have not provided the "grounds" for Regenye's "entitl[ment] to relief." *Twombly*, 550 U.S. at 555. Plaintiffs merely claim Regenye is entitled to recover benefits pursuant to her Plan. (ECF No. 1 ¶ 68.) However, Plaintiffs concede Anthem issued payment in the amount of $4,281.77 for Regenye's surgical procedure (*Id.* ¶ 40). As a plan administrator, Anthem is required to discharge its duties "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D); *see also Egelhoff v. Egelhoff*, 532 U.S. 141, 147 (2001). To the extent Plaintiffs argue Anthem improperly refused "to pay the 'usual and customary charge' for [Dr. Risin's] [s]ervices which is the 'usual and customary charge' in a given geographical area" (ECF No. 1 at 12), Plaintiffs fail to identify any specific Plan provision entitling payment of benefit based on the "usual and customary charge." *See Hein v. F.D.I.C.*, 88 F.3d 210, 215 (3d Cir. 1996) ("Only the words of the

Plan itself can create an entitlement to benefits."); *Kennedy v. Plan Admin. for DuPont Sav. & Inv. Plan*, 555 U.S. 286 (2009) (finding a plaintiff's ERISA claim "stands or falls by the terms of the plan" (quotation omitted)). Indeed, without reference to any provision governing benefit payments under the Plan itself, Plaintiffs' violation of ERISA allegations against Anthem for paying below the "usual and customary charge" is conclusory and fails to raise the right to relief above a speculative level. *Twombly*, 550 U.S. at 555. Therefore, Plaintiffs have not sufficiently pled factual allegations to establish whether "benefits due to h[er] under the terms of h[er] plan" were wrongfully denied. 29 U.S.C. § 1132(a)(1)(B); *see also Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002) (finding restitution of plan benefits is only appropriate "where money . . . belong[s] in good conscience to the plaintiff").

Moreover, several courts in this circuit have dismissed denial of benefits claims for failure to allege the specific provision violated in an ERISA-governed plan. *See Piscopo v. Public Serv. Elec. & Gas Co.*, No. 13-552, 2015 WL 3938925, at *5 (D.N.J. June 25, 2015) (dismissing an ERISA claim because the plaintiff had "not pointed to any provision of a [] benefit plan suggesting he is entitled to pension or retirement contributions nor has he alleged any facts about the plan"), *aff'd*, 650 F. App'x 106, 110 (3d Cir. 2016) (affirming dismissal of an ERISA claim for failure to provide details concerning "the plan, or provision showing that [the plaintiff] is entitled to retirement benefits."); *Atl. Plastic & Hand Surgery, PA*, 2018 WL 1420496, at *10 (dismissing an ERISA claim because the complaint failed "to identify any specific provision in the Plan from which the [c]ourt can infer that [the p]laintiffs were entitled to compensation at the 'usual and customary rate' for out-of-network medical services"). Accordingly, Anthem's Motion to Dismiss Plaintiffs' Complaint for failure to state a claim for denied benefits is **GRANTED**.

ii.    <u>Breach of Fiduciary Duty</u>

Anthem argues Plaintiffs have failed to state a claim for breach of fiduciary duty. (ECF No. 8-1 at 10-11.) Specifically, Anthem argues "Plaintiffs do not allege facts which, if proven, would establish a claim for breach of fiduciary duty independent of their alleged denial of benefits claim; hence, any purported breach of fiduciary duty claim would be duplicative and subject to dismissal." (*Id.* at 12.) Plaintiffs allege Anthem failed to comply with procedural requirements as provided under Section 503 of ERISA and in the accompanying regulations pursuant to 29 C.F.R. Section 2560.503.1. Specifically, Plaintiffs allege Anthem is liable for breach of fiduciary duties as a plan administrator under Section 404(a)(1)(A)-(B), 405(a), and 409(a) of ERISA, 29 U.S.C. Sections 1104(a)(1)(A)-(B), 1105(a), and 1109(a), arguing Anthem:

    a.  Failed to process [] Regenye's claim for benefits and any appeals;

    b.  Failed to maintain reasonable claims procedures and provide written claim determinations within a specific time period in violation of 29 CFR 2560.503(f);

    c.  Failed to provide adequate notice in writing setting forth the specific reasons for the denial of benefits to [] Regenye, written in a manner calculated to be understood by [] Regenye and failed to provide a description of or a copy of any internal rule, guideline, protocol, or other similar criterion that was relied upon in arriving at the denial in violation of 29 CFR 2560.503.1(g)(1)(v)(A);

    d.  Failed to state the specific reason or reasons for the adverse determinations . . . and failed to afford the insured the right to appeal the denial and have a full and fair review of the claim and adverse benefit decision in violation of 29 CFR 2560.503.1(g)-(j);

    e.  Failed to reference the specific plan provisions on which the determinations were based in violation of 29 CFR 2560.503.1(g)(1)(ii),(iii);

f.  Failed to provide a description of any additional material or information necessary for Plaintiffs to perfect their claim and an explanation of why such material or information was necessary in violation of 29 CFR 2560.503.1(g)(1)(ii),(iii);

g.  Failed to afford a reasonable opportunity for a full and fair review of the claim submitted by Plaintiffs and any decision denying the claim.; and,

h.  Failed to pay the "usual and customary charge" for [Dr. Risin's] [s]ervices which is the "usual and customary charge" in a given geographical area.

(ECF No. 1 at 11-12.)

Under Section 502(a)(3) of ERISA, a civil action may be brought

by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(3). Section 502(a)(3) provides for equitable relief for injuries not otherwise remedied under Section 502. *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996).

Whereas Section 502 of ERISA allows for a private right of action to recover benefits wrongfully denied, Section 503 "sets forth the basic requirements governing ERISA plans." *Miller*, 632 F.3d at 850–51. "[A] plan that does not satisfy the minimum procedural requirements of [Section] 503 and its regulations operates in violation of ERISA." *Id.* at 852. Section 503 states, in pertinent part, an employee benefit plan must:

(1) provide adequate notice in writing to any participant or beneficiary whose claims for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133(1)-(2); *see also Mirza v. Ins. Adm'r of Am., Inc.*, 800 F.3d 129, 136 (3d Cir. 2015) ("One of the purposes of 29 U.S.C. § 1133 . . . is to provide claimants with adequate information to ensure effective judicial review."). Additionally, regulations accompanying Section 503 note that "this section set forth minimum requirements for employee benefit plan procedures pertaining to claims for benefits by participants and beneficiaries." 29 C.F.R. § 2560.503-1(a).

Here, Plaintiffs only seek to recover monetary damages pursuant to Section 502(a)(1)(B) of ERISA's civil enforcement provision. However, a claim for breach of fiduciary duty falls outside the scope on Section 502(a)(1)(B). Indeed, even assuming Plaintiffs sufficiently pled facts to allege Anthem breached its fiduciary duty under the terms of the Plan, the Third Circuit held "[Section] 502(a)(1)(B) does not create a private cause of action for breach of fiduciary duty." *Michaels v. Breedlove*, No. 03-4891, 2004 WL 2809996, at *2 (3d Cir. Dec. 8, 2004); *Haberen v. Kaupp Vascular Surgeons Ltd. Defined Ben. Pension Plan*, 24 F.3d 1491, 1500 (3d Cir. 1994). Rather, a "direct action for breach of fiduciary duty exists in the 'other appropriate equitable relief' clause of ERISA [Section] 502(a)(3)(B)." *Bixler v. Cetnral Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1293-94 (3d Cir. 1993); *see also Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 153 (1985). Notably, for a breach of fiduciary duty claim to prevail at the motion to dismiss stage, Plaintiffs must seek equitable relief pursuant to Section 502(a)(3) of ERISA—rather than substantive relief for damages pursuant to Section 502(a)(1)(B). *See DeVito v. Aetna, Inc.*, 536 F. Supp. 2d 523, 534 (D.N.J. 2008); *Beye v. Horizon Blue Cross Blue Shield of N.J.*, 568 F. Supp. 2d 556, 575 (D.N.J. 2008); *Shah v. Horizon Blue Cross Blue Shield*, No. 16-2528, 2017 WL 680292, at *3 (D.N.J. Feb 21, 2017). Therefore, because Plaintiffs' raised their fiduciary duty claim in the confines of Section 502(a)(1)(B) in order to seek monetary relief for unpaid benefits

only—rather than other equitable relief—Plaintiffs have improperly pled and failed to state a claim for breach of fiduciary duty.

Likewise, Plaintiffs alleged violations of ERISA's procedural requirements pursuant to Section 503 of ERISA does not provide for a private right of action to recover monetary damages. *See Miller*, 632 F.3d at 851; *Ashenbaugh v. Crucible, Inc.*, 854 F.2d 1516, 1532 (3d Cir. 1988); *Galman v. Sysco Food Servs. of Metro N.Y., LLC.*, No. 13-7800, 2016 WL 1047573, at *5 n.4 (D.N.J. Mar. 16, 2016). Rather, "the remedy for a violation of [Section] 503 is to remand to the plan administrator so the claimant gets the benefit of a full and fair review." *Syed v. Hercules, Inc.*, 214 F.3d 155, 162 (3d Cir. 2000). Therefore, because Plaintiffs are only seeking monetary relief for unpaid benefits—rather than remand to Anthem for full and fair review—Plaintiffs improperly pled and failed to state a claim for relief. *See Cohen*, 2013 WL 5780815, at 8-9; *Drzala v. Horizon Blue Cross Blue Shield*, No. 15-8392, 2016 WL 2932545, *6 (D.N.J. May 18, 2016). Accordingly, Anthem's Motion to Dismiss for failure to state a claim is **GRANTED**.

### D.    Attorneys' Fees

Plaintiffs seek attorneys' fees and costs for the legal expenses incurred in bringing their ERISA action. (ECF No. 1 ¶¶ 73-76.) Pursuant to Section 502(g)(1) of ERISA, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). Although the party requesting is not required to prevail for attorney's fees to be awarded, "a fees claimant must show 'some degree of success on the merits' before a court may award attorney's fees under [Section] 1132(g)(1)." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255 (2010) (citing *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 694 (1983)). Here, Plaintiffs have failed to state a claim for denial of benefits, and therefore "necessarily cannot state a claim for entitlement to attorneys' fees in the absence of a surviving underlying claim for

benefits." *Funicelli v. Sun Life Fin. (US) Servs. Co.*, No. 12-6659, 2014 WL 197911, at *9 (D.N.J. Jan 14, 2014); *Atl. Plastic & Hand Surgery, PA*, 2018 WL 1420496, at *15. Accordingly, Anthem's Motion to Dismiss Plaintiffs' request for attorneys' fees and costs is **GRANTED**.

## IV. CONCLUSION

For the reasons set forth above, Anthem's Motion to Dismiss (ECF No. 8) Plaintiffs' Complaint is **GRANTED**. Anthem's Motion for Leave to File Supplemental Authority (ECF No. 17) is dismissed as moot. An appropriate order will follow.


**Date:** October 31, 2018                    */s/ Brian R. Martinotti*
                                              **HON. BRIAN R. MARTINOTTI**
                                              **UNITED STATES DISTRICT JUDGE**